IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES OF AMERICA, *

v.                        * CASE NO. 2:06cr214-MEF-VPM-1

DANIEL L. PLATT.          *

### MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

Comes now Daniel L. Platt by and through undersigned counsel and moves to suppress all evidence seized as a result of statements obtained on February 21, 2006 and March 7, 2006 and all inculpatory statements given by this defendant and in support thereof states the following:

### FACTS

Daniel Platt is retired from the United States Air Force and has been married for over 22 years. Platt was employed with the Millbrook School System and extremely active in his community. Prior to a suicide attempt on February 21, 2006 Platt was viewed as a model citizen.

On February 21, 2006 Platt attempted to take his life by ingesting over 150[1] 500 milligram Tylenol and cutting his wrists. Assistance was summoned to the Platt

---

[1] It is reported that Platt suffered liver damage as a result of the Tylenol overdose.

residence by his wife. Platt ingested a toxic dosage of Tylenol and was in a life threatening condition. Platt was treated at the scene by Millbrook Fire Medics and transported to Prattville Baptist Hospital Emergency Room where he received additional treatment. He was admitted to the hospital. He then was admitted to Meadhaven at Baptist Hospital in Montgomery for psychiatric care. Platt was at Meadhaven for several days.

While on the scene at the Platt residence immediately following the suicide attempt Platt was questioned by law enforcement. In response Platt told Lt. D. Pugh that he attempted to commit suicide because he had "molested" an underage child. It is reported Platt was advised of his Miranda rights before questioning.

The investigation began. On February 22, 2006 a Uniform Incident Report was prepared by Cpl. Johnny Russell, Millbrook Police Department. The report charges Platt with Sexual Abuse and Sodomy. This report was prepared during a time while Platt was hospitalized. After his release from Meadhaven and on March 7, 2006 Platt was arrested by Millbrook Police and charged with Sodomy 1st and Sexual Assault 1st.

Police reports reveal that Lt. Pugh on February 21, 2006 advised Platt "not to make any other statements." Pugh contacted Cpl. Russell and he was detailed to the scene of the suicide attempt at 16 Wildwood Drive, Deatsville, Alabama. Further, it

is reported that Russell advised Platt orally of his Miranda Rights and Platt gave a more detailed account of the molestation. This statement was used to provide the facts to support the charges of Sodomy and Sexual Abuse.

Additionally, discovery reveals that upon arrest on March 7, 2006 Platt was advised of his constitutional rights according to Miranda and Platt waived his rights and agreed to make a statement and answer questions.

During this interview Platt is said to have revealed that he had been involved with pornography for a long time by viewing it over the internet. The affidavit in support of the search warrant for the computer relative to this case states: "In response to the affiant's question, "Adult or Child Pornography?" Daniel L. Platt responded: "Not very much child." This statement was the basis for the search and ultimate seizure of Platt's Dell laptop computer on which the government's evidence to be used in this prosecution was obtained.

Based on the above stated facts any and all statements made by Platt giving rise to the investigation, arrest, and seizure of evidence should be suppressed. The affidavit used for the search and seizure of Platt's residence and laptop computer was a direct result of statements made by Platt at a time he was not mentally or emotionally capable of knowingly, voluntarily, and intelligently waiving his rights.

# ARGUMENT

At 1:30 a.m. on February 22, 2006, Platt was admitted to the Intensive Care Unit of the Prattville Baptist Hospital after it was determined that the toxicity of his blood was at a life threatening level. Later on February 22, 2006 Platt remained hospitalized in serious but stable condition.

The statement given by Platt to law enforcement regarding the molestation occurred prior to Platt receiving any treatment and at a time in which he was physically and mentally incapable of waiving his right to remain silent and to counsel.

In *Colorado v. Connelly*, 479 U.S. 157 (1986) the United States Supreme Court held that the Miranda Rule protects suspects against government coercion leading them to surrender rights protected by the Fifth Amendment but does not protect a suspect whose statement results from a mental state that compelled him to make a confession to the police.

In the case at bar Platt can show that the police used his physical and mental condition to overbear his will and coerced him into surrendering his right to remain silent and to counsel and giving a confession.

In a case with stark similarities to the case at bar the United States Court of Appeals for the District of Columbia addressed admissions made in custodial and

non-custodial settings. Specifically, by a per curiam opinion in *United States v. Barnett*, 161 U.S. App. D.C. 363, 495 F.2d 943, 1974 U.S. App. LEXIS 10650, the Court addressed admissions relevant to Miranda and the question of voluntariness apart from Miranda.

A brief summation of the facts in *Barnett* are as follows:

Ben Smith testified that Bernett had borrowed the five dollars before the four went to sleep, and that he did not wake up until about 4:00 o'clock in the afternoon when Roscoe Moore, a friend, shook him and asked him for some wine. Smith called to Nixon but received no reply; observing blood on the latter's face, Smith summoned an ambulance and the police. Upon their arrival the police discovered that Nixon was dead, and the coroner's report subsequently revealed that he died from a skull fracture, apparently the result of being struck with the ashtray stand, which lay broken near the couch where the body was found. Smith stated that Ms. Smith was present when he was awakened by Moore and that she had a bruise on her face.

After leaving the apartment following his fight with the deceased, Bernett went to a club where he spent the next two hours drinking. He was found there around 6:00 o'clock by his nephew's wife, Eartha L. Clark, and his sister, Josephine Battles. Ms. Clark told Bernett that the police were looking for him in connection with a homicide on Euclid Street, and tried to talk him into turning himself in. After drinking another glass of whiskey, he agreed to accompany the two women to Ms. Clark's apartment.

Between 7:00 o'clock and midnight Bernett remained at the apartment, drinking the entire time, for, in the words of Ms. Clark, "we had to give him a lot of whiskey to keep him there, because otherwise he was going to leave." According to Ms. Clark, Bernett gave them essentially the same version of his altercation with the deceased that he later advanced at trial. Ms. Clark had called the police shortly after bringing Bernett to her apartment, but there was no response until around midnight when Metropolitan Police Officer Ronald L. Schleig arrived after receiving a radiocast to investigate.

Officer Schleig was met by Ms. Clark outside her apartment, and she explained to him that a man inside was wanted for homicide. The officer accompanied Ms. Clark and she pointed out Bernett, who was seated on the sofa. When asked his name, Bernett blurted out "Jimmy Bernett. I know the police are looking for me. I killed a man at 1441 Euclid Street." Officer Schleig testified that at the time Bernett was drunk and that his speech was slurred.

Bernett accepted the officer's invitation to accompany him to the station house, and during the ride he continued to drink from a bottle of whiskey he had taken along. Once in his patrol car, Officer Schleig radioed headquarters to ascertain whether a homicide had occurred that day in the 1400 block of Euclid Street, and whether the police sought a man named Jimmy Bernett. When he received affirmative replies to both inquiries, he pulled the car over to the side of the street and gave Bernett the Miranda warnings.

The warnings were repeated to Bernett by Officer Louis B. Richardson at the stationhouse. After signing a "consent" form, Bernett gave an oral statement to Officer Richardson, but when it was transcribed he refused to sign it. Officer Richardson testified that at the time these events took place, Bernett was drunk.

Bernett was subsequently indicted for murder in the second-degree, and he requested a jury trial. Prior to trial his counsel moved to suppress both his admission to Officer Schleig at the apartment, and the statement to Officer Richardson at the stationhouse. The District Court denied the motion as to the first, and granted it as to the second. After four hours of deliberation, the jury returned a verdict of guilty on the lesser-included offense of manslaughter, and Bernett was sentenced to imprisonment for five to fifteen years.

In Barnett it was held that the focal point of any investigation into the voluntariness of an utterance is the mind of the declarant, and the critical inquiry is whether or not in the totality of the circumstances the assertion is the product of a rational intellect and a free will. The rationale behind outlawry of convictions based in whole or in part on involuntary incriminating declarations rests not merely on

their probable unreliability, but even more importantly on the basic premise that our legal system does not permit an advantage to be taken of a person lacking the power to make an intelligent choice. *Blackburn v. Alabama*, 361 U.S. 199, 206, 208, 4 L.Ed. 2d 242, 80 S.Ct. 274 (1960); *Fikes v. Alabama*, 352 U.S. 191, 197, 1 L.Ed 2d 246, 77 S.Ct. 281 (1957); *Rogers V. Richmond*, 365 U.S. 534, 540-41, 4 L.Ed. 2d 760, 81 S.Ct. 735 (1961).

Barnett went further stating:

"When evidence of mental illness, drug use, physical or psychological duress, or intoxication indicates that an inculpatory statement was not understandably and volitionally made, the due process guaranties of the Fifth and Fourteenth Amendments require that the statement and its fruits be excluded from use in the criminal prosecution. *Harrison v. United States*, 392 U.S. 219, 222-26, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968); *Blackburn v. Alabama*, supra note 30, 361 U.S. at 210.

Based on the foregoing all of Platt's statements and the evidence seized from the laptop computer are due to be suppressed.

Respectfully submitted,

s/Susan G. James
SUSAN G. JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: JAM012

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2006 , I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Tommie Brown Hardwick
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101