IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  2:06cr214-MEF |
| | ) | |
| DANIEL L. PLATT | ) | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS**

Comes now the United States of America by and through Leura G. Canary, United States Attorney for the Middle District of Alabama and submits that Daniel L. Platt's ("Platt") motion to suppress should be denied. Platt complains that the application for a search of his residence and laptop "was a direct result of statements made by Platt at a time he was not mentally or emotionally capable of knowingly, voluntarily, and intelligently waiving his rights." (Doc. 20, p. 3). The defendant's complaint is meritless. In support of its position, the government submits this response:

**I.     Background**

On February 21, 2006, Millbrook Police Officer Don Pugh ("Officer Pugh") responded to an attempted suicide call at the home of Daniel L. Platt and Terri Thomas[1], located at 16 Wildwood Drive, Deatsville, Alabama. Officer Pugh, along with Millbrook Fire Department Paramedics arrived at the residence and met with Terri Thomas ("Thomas"), who told Officer Pugh that her husband, Danield L. Platt ("Platt"), had slit his wrists and taken an unknown quantity of pills. Officer Pugh made contact with Platt and asked what was the problem. Platt told Officer Pugh that he was going to have to be arrested and prosecuted because he had done something terrible. Officer Pugh told Platt that every thing was going to be okay and the attempted suicide would be worked out.

---

[1] Terri Thomas and Daniel L. Platt are husband and wife. Ms. Thomas has maintained her maiden name.

Platt then told Officer Pugh that he had molested a minor[2] several times during the past few months. Officer Pugh focused on Platt's treatment by the paramedics and told Platt not to make any other statements at that time.

Officer Pugh contacted Lieutenant Johnny Russell ("Lt. Russell") and requested that Lt. Russell come to 16 Wildwood Drive. Upon arrival, Lt. Russell met with Officer Pugh who introduced him to Daniel Platt and Terri Thomas. Ms. Thomas advised Lt. Russell that her husband had admitted to her that he had molested a minor and that they had sought counseling. The counselor advised Platt and Thomas that they needed to seek legal counsel and contact law enforcement. Ms. Thomas left her husband at home and when she returned home she found him lying in the floor bleeding from his wrists. Platt told his wife that he had taken a large number of pills.

Lt. Russell asked Platt if there was some place they could talk privately. The parties moved into another room where Lt. Russell advised Platt of his *Miranda* rights. Platt stated that he understood his rights and that he wanted to make a statement and discuss the investigation with Lt. Russell. Platt told Lt. Russell that he had molested a minor numerous times over the past few months, with the last time being November or December 2005. Platt further related the details of the molestation.

Sgt. Talley transported Platt to the Prattville Baptist Hospital for further treatment. Platt was admitted to the hospital on February 21, 2006, and released the next day. Platt was admitted into another facility for other treatment. On March 4, 2006, Platt telephoned Lt. Russell to say that he

---

[2] The person allegedly molested will be referred to only as "a minor" or "the minor."

was still in treatment. Lt. Russell asked Platt to contact him when he was released. On March 7, 2006, Platt came to Millbrook Police department where he was arrested on two outstanding warrants related to the sexual abuse of the minor. Platt was read his *Miranda* rights. Platt stated that he understood his rights and agreed to give a taped statement. During the interview, Platt admitted that he had viewed child pornography.

Based upon the officer's experience, Platt's admission of molestation of a minor child, and the defendant's admission that he had viewed child pornography, Lt. Lt. Russell made an application for a search of Platt's residence and computer. The execution of the search warrant revealed that Platt possessed child pornography on his computer.

## II.     Legal Arguments

### A.     Platt Was Not In Custody When He Made Incriminating Statements At His Residence, Therefore, *Miranda* Is Not Triggered.

Statements made by Defendant Platt at his residence are admissible since the defendant was never in custody and thus *Miranda*[3] did not apply. The law is well settled that the "Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior [*Miranda*] warning." *Illinois v. Perkins*, 496 U.S. 292, 296 (1990).

Platt was not a suspect at the time the first officer arrived at his residence. The defense contends that in response to questions from law enforcement, Platt said he attempted suicide because he had "molested an underage child." (Doc. 20, p.2). Initially, Officer Pugh arrived on the scene in response to the attempted suicide call to the police department. Officer Pugh did not have a reason

---

[3]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

to suspect Platt of any criminal behavior since the dispatch call was in reference to the attempted suicide. Officer Pugh asked Platt "what was going on [there] tonight." To that question, Platt told Officer Pugh that he needed to be arrested and prosecuted because he had molested a minor. Officer Pugh told Platt not to make any further statements and Platt should get treated by the paramedics who were present. Officer Pugh did request that Lt. Russell come to the residence. Platt was orally advised of his *Miranda* rights, although Lt. Russell questioned Platt while they were still at the residence and Platt was not in custody. Platt was transported to the hospital of his choice by Sgt. Talley. Notwithstanding, Platt was not in custody because at the instant Platt was confessing to a crime, the officers had no knowledge that a crime had been committed.

      B.      **Platt's March 7, 2006, Taped Statement Was Post *Miranda* Warnings.**

On March 7, 2006, Platt went to the Millbrook Police, was advised of his *Miranda* rights, signed a written waiver, and agreed to answer Lt. Russell's questions. During the March 7, 2006, interview, Platt confessed to molesting a minor for the third time. Prior to the interview Lt. Russell was aware of the allegations by the minor. Lt. Russell was questioning Platt in furtherance of the molestation investigation. In an effort to determine what led Platt to his sexual contact with the minor, Lt. Russell asked Platt the following:

> Lt. Russell:   ...Was there any pornography or anything like that involved?
> Platt:         For me, yes. I have been involved in it for a long time.
> Lt. Russell:   For a long time, And how were you involved in that, just viewing, or...
> Platt:         Yes.
> Lt. Russell:   Over the internet or magazines?
> Platt:         Internet.
> Lt. Russell:   Internet. Adult pornography or child pornograpny?
> Platt:         Not very much child.

(Defendant's taped Statement Transcript, attached as Gov. Exhibit "A").

The defendant does not dispute that *Miranda* warnings were given prior to the taped statement. Moreover, it is undisputed that the defendant was placed under arrest on March 7, 2006, after he arrived at the Millbrook Police Department. Therefore, the challenge that remains is whether the defendant was "mentally or emotionally capable of knowingly, voluntarily, and intelligently waiving his rights." (Doc. 20, p. 3).

      **C.**    **Coercive Police Activity is A Necessary Predicate to A Finding That A Confession Is Not Voluntary.**

The defendant contends that because of the large number of pills he had taken and his attempt to commit suicide, he was not mentally or emotionally capable of knowingly, voluntarily, and intelligently waiving his rights. The defendant's contention is without merit and defendant concedes his own argument. In his motion to suppress, the defendant states the following,

> In *Colorado v. Connelly*, 479 U.S. 157 (1986), the United States Supreme Court held that the Miranda Rule protects suspects against government coercion leading them to surrender rights protected by the Fifth Amendment but does not protect a suspect whose statement results from a mental state that compelled him to make a confesion to the police.

Doc. 20, p. 4.

The government agrees with the Supreme Court and the defendant on this issue. Moreover, *Connelly* further states that "[o]nly if we were to establish a brand new constitutional right–the right of a criminal defendant to confess to his crime only when totally rational and properly motivated–could [defendant's] present claim be sustained." *Connelly* at 166.

In *Connelly* and in Platt's case, the police did not prompt the defendant's confession. Francis Connelly approached a uniform Denver Police Officer and without any prompting, confessed that

he had murdered a person and wanted to talk to the officer about the murder. The police immediately advised Connelly of his *Miranda* rights. Connelly told the officer that he understood his rights and insisted on talking about the murder. Connelly was taken to the police department and advised of his rights at least two more times by two additional officers. Connelly again confessed to the murder. In response to questions, Connelly told the officers that he had been in several mental hospitals. The next day during an interview with the Federal Defenders Office, Connelly became disoriented and stated that he was motivated to confess by "voices." A motion to suppress was filed which stated that Connelly was suffering from "command hallucinations." In spite of Connelly's mental state, the Supreme Court held "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.* at 170. The Court further expounded that "[r]espondent's perception of coercion flowing from the 'voice of God,' however important or significant such a perception may be in other disciplines, is a matter to which the United States Constitution does not speak." *Id.* at 170-171. Following *Connelly*, Platt's emotional and mental state of mind following his attempted suicide does not render his confession inadmissible in the absence of police coercion or overreaching.

The defendant also relies on the dissenting opinion in *United States v. Bernett*, 495 F. 2d 943, 161 U.S. App. D.C. 363, (1974), which quotes from *Harrison v. United States,* 392 U.S. 219, 222-226, (1968), and *Blackburn v. Alabama*, 361 U.S. 199, at 207-211, (1960). The defendant cites *Blackburn* to demonstrate that a defendant's mental state was sufficient to render the confession as involuntary. However, the defendant's reading of *Blackburn* disregards the fact that the police learned that the defendant was likely insane at the time of his confession, and took advantage of the

defendant's weakness with coercive tactics, amounting to "police overreaching." *Connelly* at 154. To the contrary, there was no coercive tactics or "police overreaching" in Platt's fact scenario. Therefore, the taking of Platt's statements by Officer Pugh and Lt. Russell did not constitute a violation of Platt's rights under the Fifth Amendment, and all of his statements should be admissible during the trial of the case.

**D.   Evidence Was Seized From Platt's Residence Based Upon Officer's Good Faith Reliance On A Valid Search Warrant.**

Even if the defendant's confessions were obtained in violation of the Fifth Amendment because, and the government does not concede that they were, the evidence seized from the defendant's computer was seized pursuant to the officers' good faith reliance upon a valid search warrant. Thus, the evidence of child pornography found on the computer should not be excluded. In *United States v. Leon*, 468 U.S. 897, 920-921, (1984), the Supreme Court held that when an officer acting with objective good faith has obtained a search warrant from a neutral and detached judge of magistrate and acted within the scope of the search warrant, the evidence should not be suppressed. *Leon* at 920-921.

The officer presented the information they had obtained from the defendant's initial confession and the defendant's post *Miranda* statement to form the probable cause in the application for the search warrant. The defendant does not suggest that there are any misrepresentations contained in the application. Therefore, "once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *Leon* at 921, (emphasis omitted).

**III.   Conclusion**

Platt has failed to demonstrate that police coercive or overreaching tactics were used to obtain

his confessions. Since coercive or overreaching activity is a predicate to the finding that Platt's statements were involuntary, Platt has failed to satisfy his burden of persuasion. In addition, the evidence seized from Platt's residence was obtained pursuant to a valid search warrant and is therefore admissible in the government's case in chief, during the trial of this case.

Moreover, the government submits that an evidentiary hearing will not provide the Court with any additional information based upon the facts in this case and the applicable case law. Further, the defendant concedes the holding in *Connelly,* and has not submitted any other case law to support his arguments to the contrary. For these reasons, Platt's motion to suppress should be denied.

Respectfully submitted on this 19th day of October 2006.

> LEURA G. CANARY
> UNITED STATES ATTORNEY
>
> s/Tommie Brown Hardwick
> TOMMIE BROWN HARDWICK
> One Court Square, Suite 201
> Montgomery, AL 36104
> Phone: (334) 223-7280
> Fax: (334) 223-7135
> E-mail: tommie.hardwick@usdoj.gov
> ASB4152 W86T

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CR. NO. 2:06cr214-MEF |
| | ) |
| DANIEL L. PLATT | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Susan G. James, Esq.

    Respectfully submitted,

    s/Tommie Brown Hardwick
    TOMMIE BROWN HARDWICK
    One Court Square, Suite 201
    Montgomery, AL 36104
    Phone: (334)223-7280
    Fax: (334)223-7135
    E-mail: tommie.hardwick@usdoj.gov
    ASB4152 W86T

## MILLBROOK POLICE DEPARTMENT
## DETECTIVE DIVISION

### VOLUNTARY TAPED STATEMENT TRANSCRIPTION

Page 4



GOVERNMENT'S
EXHIBIT
A

**Russell**
I know this, I understand. You don't have any idea what might have brought this about?

**Platt**
No, that is why I am in counseling. I just want to find out. I don't want to, if I go to prison, I am not going to get better. I am not saying that I shouldn't go to prison. I am not saying that at all. I just, I want to know how come I could let me do something like this. How can..

**Russell**
That is what we all would like to understand. Was there any pornography or anything like that involved?

**Platt**
For me, yes. I have been involved in it for a long time.

**Russell**
For a long time. And how were you involved in that, just viewing or...

**Platt**
Yes.

**Russell**
Over the internet or magazines?

**Platt**
Internet.

**Russell**
Internet. Adult pornography or child pornography?

MILLBROOK POLICE DEPARTMENT
DETECTIVE DIVISION

VOLUNTARY TAPED STATEMENT TRANSCRIPTION

Page 5

**Platt**
Not very much child.

**Russell**
Not very much child. Okay sir. Is there anything that you would like to ask, Sgt. Slater?

Sl..